UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SHEVONDA HOYT,                                  :

                    Plaintiff,      :

           -against-               :        **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, as Acting           :        15-CV-95 (VEC)(KNF)
Commissioner of Social Security,

                         :

              Defendant.
----------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Shevonda Hoyt ("Hoyt") commenced this action against the acting Commissioner of

Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ")

decision, dated March 11, 2014, finding her ineligible for Supplemental Security Income

benefits, pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Before the

Court are the parties' respective motions for judgment on the pleadings, pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure.

## ALJ'S DECISION

Hoyt alleged disability beginning November 10, 2011. An administrative hearing was

held, on October 12, 2012, at which Hoyt, represented by counsel, and a vocational expert

testified. The issue before the ALJ was whether Hoyt is disabled. The ALJ determined that

Hoyt: (1) has not engaged in substantial gainful activity since March 28, 2012; (2) has the

following severe impairments: kidney disease, asthma, obesity, migraine headaches,

hypertension, sleep apnea, carpal tunnel syndrome, lumbar degenerative disc disease, post-

traumatic stress disorder, intellectual disability, panic disorder, personality disorder, schizophrenia, depression, anxiety and cocaine abuse in remission; (3) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. § 416.967(a), "allowing a sit/stand option at will, provided that she will not be off task more than five percent of the work period, and in fact will be permitted to be off task for five percent of the work period in addition to regularly scheduled breaks," and can climb ramps or stairs, balance, stoop, kneel, crouch or crawl occasionally, but can never climb ladders, ropes or scaffolds, can handle and finger frequently, must avoid concentrated exposure to atmospheric conditions and can never work around moving mechanical parts or at unprotected heights, is limited to simple, routine tasks such as those demanded by jobs of "SVP 2 or less, in a loss stress job defined as involving only occasional decision-making or workplace changes," and can interact with the public, co-workers or supervisors only occasionally; (5) has no past relevant work; (6) was 33 years old at the time of her application for benefits; and (7) has a marginal education and is able to communicate in English. The ALJ found that transferability of job skills is not an issue because Hoyt does not have past relevant work and, considering her age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Hoyt can perform. The ALJ concluded that Hoyt has not been under disability from March 28, 2012, to the date of her application for benefits. More specifically, concerning Hoyt's mental impairments, the ALJ found that Hoyt's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration. The ALJ determined that Hoyt has: (a) mild restrictions in activities of daily living; (b) mild

2

difficulties in social functioning; (c) moderate difficulties in concentration, persistence or pace; and (d) experienced one to two episodes of decompensation, each of extended duration. With respect to the Listing 12.05 requirement that mental incapacity be evidenced by dependence upon others for personal needs and an inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded, the ALJ found that Hoyt is able to perform self-care and, on recent mental status testing, had normal orientation, attention, memory and fund of knowledge. The ALJ acknowledged that Hoyt's full scale Intelligence Quotient ("IQ") measured 59 and testing was performed not long after she achieved abstinence following 20 years of cocaine abuse. The ALJ noted that Sheryl Statman, Ph.D. ("Dr. Statman"), who administered the mental status test, attributed deficits, in part, to substance abuse. However, because the substance abuse occurred after Hoyt reached the age of 22, the evidence does not demonstrate that the onset of the deficits occurred before she reached the age of 22. The ALJ found that Hoyt does not suffer from qualifying deficits in adaptive functioning and noted that a psychiatric assessment by Dr. Stuart Schwartz estimated Hoyt's intelligence as average. Furthermore, Hoyt is fully independent in the activities of daily living and her impairment does not prevent her from engaging independently in a wide array of activities, such as attending church, going for walks, babysitting for her nephew, going to a gym and attending Zumba classes.

The ALJ considered medical evidence in the record, including a report from a psychological examination of Hoyt, in July 2012, by Elizabeth Kronk, Ph. D. ("Dr. Kronk"), who reported impaired attention, concentration, and recent and remote memory, due to limited intellectual functioning and psychiatric concerns. Dr. Kronk opined that Hoyt is able to: (i) follow and understand simple instructions and perform simple tasks with supervision; (ii)

maintain attention and concentration, but would have difficulty maintaining a schedule secondary to depressed mood; and (iii) learn new tasks, but would not be able to perform complex tasks independently or with supervision. However, Dr. Kronk opined that Hoyt is unable to make appropriate decisions, relate adequately with others or deal appropriately with stress, as a result of psychiatric problems and cognitive deficits. Dr. Kronk opined that these difficulties may interfere significantly with Hoyt's ability to function on a daily basis. The ALJ gave some weight to Dr. Kronk's opinion that Hoyt's impairments may limit significantly her daily functioning ability and maintaining a schedule, because the evidence shows that Hoyt is able to get along with others, adhere to a schedule, as shown by regular attendance at weekly Bible study, at church, and at medical appointments, and she is able to make simple decisions. The ALJ gave significant weight to Dr. Statman's report because she conducted a thorough evaluation and provided a detailed report identifying Hoyt's cognitive strengths and weaknesses. Particularly, Dr. Statman identified jobs Hoyt could perform and furnished a detailed list of training strategies. Moreover, evidence from Hoyt's psychiatrist and therapist in her substance abuse treatment program is consistent with Dr. Statman's opinion and her conclusions are consistent with Hoyt's daily activities. The ALJ determined that Hoyt's residual functional capacity assessment is supported by limitations resulting from Hoyt's multiple impairments. The vocational expert testified that an individual with Hoyt's limitations would be able to perform the requirements of representative occupations such as garment sorter, remnant cutter, collator operator, table worker, document preparer and cuff folder, all of which exist in significant numbers in national economy. The ALJ concluded that Hoyt is not disabled.

## PLAINTIFF'S CONTENTIONS

Hoyt contends that she should have been found disabled at step three of the sequential analysis because substantial evidence shows that she meets or equals Listing 12.05(b). According to Hoyt, her full scale IQ is 59 and evidence supports the onset of her impairment before the age 22, notwithstanding that the IQ testing was conducted after her 22nd birthday. Hoyt contends that the ALJ stated that Hoyt's IQ testing was done "not long after" she achieved sobriety after 20 years of drug abuse and Dr. Statman attributed deficits, in part, to substance abuse which occurred after the age of 22. However, she asserts, the IQ testing was performed in May 2013, and Hoyt had not used drugs since May 2012, which hardly qualifies as "not long after" she achieved sobriety. According to Hoyt, Dr. Statman also stated that Hoyt's "deficits are likely the combination of pre-natal drug abuse, multiple blows to the head from physical abuse, and chronic substance abuse," which shows that Hoyt's deficits can also be attributed to conditions that occurred prior to the age of 22. Hoyt contends that the ALJ's noting that she became sober after 20 years of substance abuse, "intimating that recent substance abuse is the cause of her low intellectual functioning," amounts to an improper determination on the part of the ALJ because the ALJ is not a medical professional. Hoyt asserts that neuropsychological testing revealed that her executive functions, such as attention, multi-tasking, problem solving skills and sustained attention, are impaired severely. Hoyt contends that Dr. Kronk determined that she is able to perform simple tasks with supervision, but is unable to maintain a regular schedule and make appropriate decisions, which shows that Dr. Kronk "surmised that these difficulties are caused by [Hoyt's] 'psychiatric difficulties and cognitive deficits.'"

Concerning the ALJ's determination that Hoyt does not suffer from qualifying deficits in adaptive functioning, Hoyt contends that she attended school in a self-contained special

5

education classroom, without graduating, and her academic skills are at or below the third-grade level, her language skills are limited significantly, and she is "functionally illiterate." Hoyt testified that she does not know how to drive, "frequently gets lost when using public transportation," and is unable to shop for groceries without assistance. Hoyt does not know how to cook and was unable to complete a cooking class because she was unable to remember the steps and "couldn't copy down the instructions." Hoyt asserts that, although she testified that she reads the bible, she reads a little bit and most of the time does not understand what she is reading. Hoyt asserts that Dr. Statman's and Dr. Kronk's opinions support further her claimed deficits in adaptive functioning. For example, Dr. Statman described Hoyt as "somewhat sad and childlike," only capable of concrete conversation and having difficulty following all but the simplest verbal directions. Moreover, Dr. Statman noted that Hoyt would need practice and extra time to complete tasks, is slow to process and respond to information, has difficulty maintaining focus on a task and following through and her work is "inconsistent, unstable and her product is plague with errors." Hoyt asserts that Dr. Kronk determined that she would have difficulty maintaining a schedule and making appropriate decisions and that she does not relate adequately to peers and supervisors. Dr. Kronk concluded that Hoyt's cognitive problems may interfere significantly with her ability to perform work on a daily basis.

Hoyt contends that the ALJ erred by failing to consult a medical expert to determine whether Hoyt's intellectual impairment meets Listing 12.05(b). Hoyt maintains that additional evidence was submitted in her case, on December 3, 2013, containing IQ testing that may have changed the medical consultant's findings. The consultative psychiatric evaluation was conducted on July 9, 2012, and additional medical evidence regarding Hoyt's intellectual disability was submitted, on December 3, 2013, which contained "IQ testing with a direct

6

bearing on whether" she meets Listing 12.05(b). Hoyt seeks remand to develop the medical record, including "securing the testimony of a medical advisor, a consultative examination by a neuropsychologist" and a new hearing.

## DEFENDANT'S CONTENTIONS

The defendant contends that the ALJ's decision is supported by substantial evidence, including the ALJ's finding that Hoyt's intellectual disability did not meet the criteria for Listing 12.05. According to the defendant, notwithstanding Hoyt's IQ score of 59, Hoyt did not show that she exhibits qualifying deficits in adaptive functioning. The ALJ reviewed voluminous evidence of Hoyt's adequate level of adaptive functioning, observing that she lived on her own and was independent fully in her daily activities, which Hoyt admitted on several occasions. For example, evidence of Hoyt's ability respecting daily activities is not rebutted by evidence of her inability to complete the cooking class because the record shows, repeatedly, and Hoyt acknowledged, that she is able to prepare basic, healthy meals every day. The ALJ also noted that Hoyt was able to travel independently by public transportation and Hoyt contends that she uses public transportation, frequently, although "she frequently gets lost," showing that she is resourceful enough in negotiating public transportation to remain fully functionally independent. Similarly, the ALJ observed that Hoyt was able to shop independently for food, clothes and other personal items, and although she required assistance with the budgeting aspect of shopping, Hoyt admitted that she was fully able to pay her bills and handle a savings account. Moreover, the ALJ noted that Hoyt exhibited normal adaptive functioning skills, including maintaining friendships, and she had no problem getting along with others, which was supported by Dr. Statman's observation that Hoyt was pleasant. The defendant asserts that Hoyt also admitted babysitting her nephew on multiple occasions, which is a task requiring a significant degree of

7

responsibility and the ability to cope with challenges. The defendant contends that Hoyt had some success in a workforce, with prior jobs as a security guard, ride operator and daycare worker, and no indication exists that her cognitive abilities interfered with her ability to perform these jobs. According to the defendant, the evidence shows that Hoyt is able to meet the challenges of both simple work and day-to-day life, including Hoyt's treating psychiatrist's estimate that Hoyt's ability to work is fair. The defendant contends that the ALJ relied, properly, on the assessment of Dr. Kronk that Hoyt could follow and understand simple directions and instructions, perform simple tasks with supervision, maintain attention and concentration and learn new tasks. The defendant maintains that the ALJ's conclusion concerning Hoyt's eligibility for Listing 12.05 is supported by the evidence, including the opinion of a state-agency psychologist, who concluded that Hoyt's mental impairments would not preclude work-related functioning. Moreover, Dr. Statman's report did not indicate that Hoyt experienced qualifying deficits in adaptive functioning, as required to meet Listing 12.05.

The defendant contends that the ALJ was not required to obtain additional opinion evidence, and he exercised his discretion properly in determining whether to seek additional opinions. The ALJ considered fully Dr. Statman's May 2013 assessment of Hoyt, which was supported by prior medical evidence indicating, consistently, Hoyt's ability to perform simple work. The defendant asserts that the ALJ's conclusions at steps four and five of the sequential analysis are supported by substantial evidence.

## PLAINTIFF'S REPLY

Hoyt contends that substantial evidence supports a finding that she cannot meet the demands of any work. According to Hoyt, "[s]hould it be found that Plaintiff does not meet or equal listing 12.05, (Step 3), and given that Plaintiff has no past relevant work, Plaintiff should

8

be found disabled at Step 5." Hoyt asserts that the ALJ erred when he failed to acknowledge that she does not have the residual functional capacity to handle the mental demands of work. More specifically, Dr. Statman opined that, "if Plaintiff's medical and emotional status remains stable, she would be a candidate for supported work placement" and diagnosed Hoyt with neurocognitive dysfunction, not otherwise specified, depressive disorder, not otherwise specified, and mild mental retardation. Thus, Dr. Statman's evaluation does not support the notion that Hoyt can work at a substantial gainful level. Hoyt asserts that the ALJ's hypothetical posed to the vocational expert lacks specificity and the ALJ failed to consider evidence showing that Hoyt would require full-time regular supervision, would have difficulty with all but the most basic information, would not be able to maintain a regular schedule or make appropriate decisions, relate with others and deal with stress, and would have significant limitations in her ability to understand and learn new information. Hoyt contends that the ALJ's hypothetical profile was incomplete.

### DEFENDANT'S REPLY

The defendant contends that the ALJ's decision must be upheld "even where substantial evidence supports both parties." She asserts that Hoyt failed to dispute the evidence identified by the ALJ, including evidence showing her adequate level of adaptive functioning. The defendant maintains that reversal is not warranted based on Hoyt's emphasis on "the most negative aspects of Dr. Statman's evaluation," in light of the ALJ's observation that Hoyt's cognitive faculties had been examined by a number of medical professionals prior to Dr. Statman's administration of the IQ test and these sources reported information consistent with an ability to meet challenges of both simple work and daily life. Furthermore, Dr. Statman identified specific types of work that Hoyt could perform, successfully, such as housekeeping,

9

maintenance or stock work.  The defendant contends that Hoyt's reliance on her testimony

cannot overcome the ALJ's valid exercise of discretion to evaluate that testimony in light of the

overall record.  Moreover, Hoyt's "criticism" of the ALJ's hypothetical posed to the vocational

expert is "based on Plaintiff's recitation of an incomplete subset of clinical observations that the

ALJ properly weighed but found not fully persuasive in light of the substantial other evidence

showing that Plaintiff had significant adaptive functioning abilities."

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "The court shall have power to enter,

upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing

the decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing."  42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is
> not disabled only if the factual findings are not supported by "substantial evidence"
> or if the decision is based on legal error.  Substantial evidence "means such relevant
> evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).  "Even where the

administrative record may also adequately support contrary findings on particular issues, the

ALJ's factual findings 'must be given conclusive effect' so long as they are supported by

substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (quoting Schauer v.

Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).  "Failure to apply the correct legal standard

constitutes reversible error, including, in certain circumstances, failure to adhere to the

applicable regulations."  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations

omitted).  "It is not the function of a reviewing court to decide *de novo* whether a claimant was

disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration] regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

Title XVI of the Social Security Act provides benefits to "[e]ach aged, blind, or disabled individual" whose income and resources fall below a certain level. 42 U.S.C. § 1382(a). To qualify for disability benefits, an individual must prove that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.912(a). Social Security Administration regulations establish a five-step process for determining a disability claim. See 20 C.F.R. § 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless, the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.
>
> Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"The applicant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

"Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity of this disorder is met when [a] full scale IQ [is] 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.05. "[E]vidence of a qualifying deficit in adult cognitive functioning serves as prima facie evidence that those deficits existed prior to a petitioner's twenty-second birthday, as is required by current [Social Security Administration] regulations . . . . [T]o be considered mentally retarded, a petitioner must separately establish deficits in her cognitive and adaptive functioning." Talavera, 697 F.3d at 148 (citation omitted). "Adaptive functioning refers to an individual's '[]ability to cope with the challenges of ordinary everyday life.'" Id. at 153. In determining whether the claimant suffers from deficits in adaptive functioning, courts consider various factors, including the ability "to satisfactorily navigate activities such as living on one's own, taking care of children without help sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction." Id. (quotation marks, alterations and ellipses omitted).

## APPLICATION OF LEGAL STANDARD

Hoyt takes issue with the ALJ's characterization of the time period when her IQ testing was performed as "not long after she achieved abstinence following 20 years of cocaine abuse," whereas that time period was only one year and "hardly qualifies as 'not long ago.'" However,

in light of the length of the time period: 20 years of substance abuse, one year of abstinence is characterized properly by the ALJ as "not long after" Hoyt achieved sobriety. Contrary to Hoyt's contention, the ALJ did not intimate "that recent substance abuse is the cause of her low intellectual functioning."

Hoyt contends that she meets or equals Listing 12.05, pointing to evidence tending to show qualifying deficits in her adaptive functioning. However, evidence that Hoyt does not know how to drive, "frequently gets lost when using public transportation," is unable to shop for groceries without assistance with the budget, cannot cook, was unable to complete a cooking class and reads a "little bit" but mostly does not understand what she is reading, is not sufficient to satisfy Hoyt's burden at step three of the sequential analysis, even if that evidence is substantial, because substantial evidence in the record supports the ALJ's finding that Hoyt has an adequate level of adaptive functioning. The ALJ considered, properly, that Hoyt was able to: (a) prepare basic, healthy means every day; (b) perform basic household duties, such as cooking, cleaning and laundry; (c) travel independently by public transportation and manage successfully any related difficulties; (d) prepare and follow a shopping list; (e) pay her bills; (f) handle a savings account; (g) maintain friendships and get along with others; (h) exhibit good manners and proper grooming; and (i) babysit her nephew, successfully. The ALJ provided a detailed explanation of his assessment of Hoyt's medical record, including Dr. Kronk's assessment of Hoyt's mental status and Dr. Statman's report in which she opined that, despite Hoyt's IQ score of 59, Hoyt had the ability to follow through with hands-on tasks that were well learned and familiar and identified specific work that Hoyt could perform, such as housekeeping, maintenance or stock work. Moreover, Dr. Statman opined that, in a stable, constant

environment, and after Hoyt learned what was expected of her, Hoyt could function on the job independently.

Hoyt contends that additional evidence was submitted, on December 3, 2013, that may have changed the July 9, 2012 medical consultant's findings. However, the evidence submitted on December 3, 2013, Dr. Statman's neuropsychological evaluation of Hoyt in May 2013, was considered by the ALJ in great detail. The ALJ exercised, properly, his discretion in determining whether Dr. Statman's May 2013 report necessitated any change of the July 9, 2012 consultative examiner's findings. The Court finds that the ALJ was not required to schedule a new consultative examination or to call a medical expert in connection with the May 2013 evidence.

The Court finds that substantial evidence supports the ALJ's finding that Hoyt has an adequate level of adaptive functioning. Moreover, the ALJ committed no error in making his findings, and the ALJ's conclusions at steps four and five of the sequential analysis are supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiff's motion, Docket Entry No. 18, be denied and the defendant's motion, Docket Entry No. 24, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni, 40 Centre Street, Room 240, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any

requests for an extension of time for filing objections must be directed to Judge Caproni.

***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      March 4, 2016

Respectfully submitted,

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE